```
                     UNITED STATES DISTRICT COURT
                     WESTERN DISTRICT OF NEW YORK
```

_____

**UNITED STATES OF AMERICA,**

                                                        Case No. 1:22-cr-184
              Plaintiff,                        (LJV)

vs.                                         February 10, 2023

**DANIEL WARMUS,**

              Defendant.
_____

**TRANSCRIPT OF SUMMONS RETURN DATE FOR A MODIFICATION HEARING**
      BEFORE THE HONORABLE LAWRENCE J. VILARDO
           UNITED STATES DISTRICT JUDGE

**APPEARANCES:**        **TRINI E. ROSS, UNITED STATES ATTORNEY**
                           **BY: MICHAEL DiGIACOMO, ESQ.**
                           Assistant United States Attorney
                           Federal Centre
                           138 Delaware Avenue
                           Buffalo, New York 14202
                           For the Plaintiff

                           **LAW OFFICES OF DANIEL J. DUBOIS**
                           **BY: DANIEL J. DUBOIS, ESQ.**
                           390 Elmwood Avenue
                           Buffalo, New York 14222
                              And
                           **TEXIDO LAW OFFICE**
                           **BY: NICHOLAS TIMOTHY TEXIDO, ESQ.**
                           101 Slade Avenue
                           West Seneca, New York 14224
                           For the Defendant

**PROBATION:**         **WILLIAM BOVA, USPO**
                           **MELISSA S. LINTON, USPO**

**COURT DEPUTY CLERK:**   **COLLEEN M. DEMMA**

**COURT REPORTER:**      **ANN M. SAWYER, FCRR, RPR, CRR**
                           Robert H. Jackson Courthouse
                           2 Niagara Square
                           Buffalo, New York 14202
                           Ann_Sawyer@nywd.uscourts.gov

1          (Proceedings commenced at 1:09 p.m.)

2          THE CLERK: All rise. United States District Court
3  for the Western District of New York is now in session, the
4  Honorable Lawrence J. Vilardo presiding.

5          THE COURT: Please be seated.

6          THE CLERK: 22-CR-184, United States of America
7  versus Daniel Warmus.

8          Assistant United States Attorney Michael DiGiacomo
9  appearing on behalf of the government.

10         Attorneys Daniel DuBois and Nicholas Texido appearing
11 with defendant. Defendant is present.

12         Also present are U.S. Probation Officers William Bova
13 and Melissa Linton.

14         This is the summons return date for a modification
15 hearing.

16         THE COURT: Good afternoon, everybody.

17         ALL PARTIES: Good afternoon, Judge.

18         THE COURT: So I'm in receipt of a few things. One
19 is the request for summons and modification of conditions or
20 term of supervision from the probation office.

21         I've also received a letter from John C. Welch, Jr.,
22 of the County of Orleans, he's the chief administrative
23 officer there.

24         I've received a letter from the Sheriff of Erie
25 County, actually from -- it's written by James P. Welch, who

1   is the commander investigative serves of the Erie County

2   Sheriff's Office.

3         I've received a letter from the office of the Yates

4   County Administrator signed by Winona B. Flynn, who is the

5   county administrator in Yates County.

6         And I received a letter from the City of Elmira,

7   New York, Police Department signed by Anthony A. Alvernaz, the

8   chief of police.

9         Do you have all this?

10        MR. DuBOIS:  Yes, Your Honor.

11        THE COURT:  And do you have all this, Mr. DiGiacomo?

12        MR. DiGIACOMO:  I do, Your Honor.  Thank you.

13        THE COURT:  Okay.  So who wants to talk?  Who wants

14  to --

15        MR. DiGIACOMO:  Well --

16        MR. DuBOIS:  After you.

17        MR. DiGIACOMO:  All right.  Judge, I'm going to say

18  in my 20 years of being in the office, I've yet to see a

19  modification petition dealing with this issue.

20        I have -- I did have the opportunity to speak with --

21  with counsel, and it's really -- we both agree that it's

22  really not a factual issue, but we think it's more of a legal

23  issue as to whether or not the Court can impose the

24  modification as sought by the probation department.

25        THE COURT:  I think there's some First Amendment

1  issues there.

2      MR. DiGIACOMO:  Correct.  And that's obviously the
3  position of Mr. Warmus.

4      And, Judge, and again, I don't want to sit here and
5  debate the law, but we think it's more of a -- it's not like
6  we've seen in a lot of modification petitions or supervised
7  release petitions.  It's not a question of fact.  The video
8  exists.  It's more of a legal issue of can the Court amend it
9  to do this without -- if -- if they decide to do it, what's
10 the extent without causing a significant infringement on that
11 right.

12     THE COURT:  Yeah, so it's can the Court do it, and
13 it's also should the Court do it.  Because even if I can, you
14 know, I've got -- I've got concerns about Mr. Warmus's First
15 Amendment rights here.  So -- so even if I thought I might be
16 able to do it within the constraints of the First Amendment, I
17 still might be reluctant to do it given -- given everything
18 that's going on.

19     Tell me this.  Has he done anything -- is it the
20 government's position or the probation office's position that
21 he's done anything that violates any condition of his
22 supervised release?

23     MR. DiGIACOMO:  Under the terms and conditions of his
24 current supervision imposed out of Washington, D.C., it's my
25 understanding Mr. Warmus has not violated any one of those

1   terms and/or conditions.

2          THE COURT:  Right.

3          MR. DiGIACOMO:  So this is just a modification,

4   Judge.

5          THE COURT:  And I get the concerns that the county

6   has because of the threats that are made and the phone calls

7   and the disruption and things like that.  I get that, I

8   understand that, and I sympathize with that.

9          But he's not making those threats, he's not -- he's

10  not doing those things.

11         So, I mean, I'm willing to, if you folks want to make

12  a submission that deals with the First Amendment issues, and

13  whether I can and should impose conditions like this within

14  the constraints of the First Amendment, the significant

15  constraints of the First Amendment, I'm certainly willing to

16  read anything you give me.  But I can tell you that based on

17  what I've seen and heard on the tape -- I did not watch the

18  entire tape, I watched the first 30 minutes or 40 minutes, it

19  seemed like -- I told my clerk it seemed like Groundhog Day

20  after a while because it was going over and over again, the

21  same thing, and I didn't think it was going to change

22  appreciably.

23         I thought the security guard was a hero on the tape.

24  I thought he -- he was terrific, and sort of cut through all

25  the red tape in a very nice, appropriate, meaningful way.

1          And the I've gotten a couple other letters about
2   Mr. Warmus from, you know, government officials saying that,
3   you know, he comes and he puts them to the test, and watches
4   what they're doing, and tapes what they're doing, but does it
5   in a polite, respectful, not-inappropriate way.  The tape may
6   have pushed the envelope a little bit, bu, you know, there are
7   no laws about pushing envelopes.
8          So tell me, what do you want to do?  And I'll hear
9   from probation, too.  What do we want to do?
10         MR. DiGIACOMO:  Your Honor, may I speak with
11  probation for a moment?
12         THE COURT:  Yeah, absolutely.
13         MR. DiGIACOMO:  Thank you.
14         (Off the record at 1:15 p.m.)
15         (Back on the record at 1:17 p.m.)
16         THE COURT:  Let's go back on the record.
17         MR. DiGIACOMO:  Your Honor, I thank you for the
18  opportunity to speak with the probation department.  And I
19  know you asked the probation department if they had anything
20  to say, and I believe they do wish to address the Court.  And
21  then after they address the Court, I will circle back to the
22  Court's question as to with respect to a submission if that's
23  allowed.
24         THE COURT:  Terrific.
25         USPO BOVA:  Thank you, Your Honor.  So the probation

1  office, you know, has a lot of responsibilities when it comes
2  to supervising people out in the community.  And one of those
3  responsibilities is, you know, being the eyes and ears for the
4  Court, to bring about information so Your Honor can make
5  educated decisions on the success of Mr. Warmus going forward.
6              And the probation office is proposing this
7  modification request actually looking out for Mr. Warmus to
8  prevent another -- if he did post another video and similar
9  conduct did happen, he could be held potentially liable if
10 someone does something unfortunate in a video that he posts.
11 So that's the reason behind our request.
12             And we're looking out for him, because if that would
13 become a new crime, that could potentially be a violation of
14 his mandatory condition of violating another state or local
15 crime.  So that is where the probation office is coming from
16 to address Your Honor.
17             THE COURT:  And I don't -- I don't mean to be in any
18 way critical of the probation office for bringing this to my
19 attention.  I'm not.  I just think that there are significant
20 First Amendment issues here that we would need to deal with
21 before I did something like this.
22             And let me say this, too.  I'm thrilled to see good
23 lawyers here with Mr. Warmus because they can advise him on
24 the sorts of things that you're talking about.  And I don't
25 doubt for a second that what you're trying to do is to set

1   Mr. Warmus up to succeed and not to -- and so to protect him.
2   But he's got to make those decisions, right?
3           I mean, he's got First Amendment rights, and he's got
4   to make those decisions as to whether he's doing something
5   that might cross the legal/illegal line.  And I'm glad he's
6   lawyers with him, because they can advise him on those kinds
7   of questions.
8           So, I mean, you say he could be held liable if
9   somebody were to do something.  I guess that would depend on
10  what his role in the somebody doing something was.
11          USPO BOVA:  Yes, Your Honor.
12          THE COURT:  I get that.  I mean, look it, I get in
13  today's world, people post things and it results in other
14  people doing things that are inappropriate, and there might be
15  a -- a desire to hold the person who did the first posting
16  responsible, but that's not always the law.
17          And, so, well, I've said enough.  Mr. DiGiacomo, what
18  do you have to say?
19          MR. DiGIACOMO:  Thank you, Your Honor.
20          Your Honor, after speaking with probation, although
21  in light of the Court's concerns, I would ask for an
22  opportunity for the parties to be able to submit something for
23  the Court to consider in the form of a -- I don't know, I
24  don't think it will be an extensive brief, it will be enough
25  to cover, but I'm thinking maybe if you could provide -- if

1   the Court would prefer simultaneous briefing or how Your Honor

2   would prefer something like that.  But I'm asking from the

3   government's perspective if we could have at least three weeks

4   for our submission.  That would be reasonable?

5            THE COURT:  Any problem with that?

6            MR. TEXIDO:  No problem from us, Your Honor.

7            THE COURT:  How much time would you need?

8            I would want your submission first, I would want a

9   defense response, and then another reply from the government.

10           MR. TEXIDO:  I would say then three weeks.

11           THE COURT:  So three weeks from today is what,

12  Ms. Demma?

13           THE CLERK:  It is March 3rd.

14           THE COURT:  March 3rd.

15           And then March 24th for the defense submission.

16           THE CLERK:  Yes.

17           THE COURT:  And then a submission back from the

18  government -- how about a week for a reply?

19           MR. DiGIACOMO:  That's fine, Judge.

20           THE COURT:  Okay.  A week for a reply.

21           And then if I need oral argument, I'll -- I'll

22  schedule oral argument.  I don't know if I will or not.  But

23  I'm, as I said, I'm glad to see good lawyers here on the

24  left-hand side of the courtroom because -- at least my

25  left-hand side, because I share probation's concern, and I

1  don't want Mr. Warmus crossing any lines.  You know, I don't

2  know that he did from what I saw, from what I've seen, and the

3  letters certainly suggest, at least some of the letters

4  suggest, that he has not.  That he's been, you know, a

5  watchdog.  He wants to be a watchdog, right?  And he's been a

6  watchdog, and he's done it in an appropriate way.  That's

7  great.

8          But I'm glad he's getting legal advice on these kinds

9  of things because I think he needs that, and I can't give it

10 to him anymore.  In my former life, I could have, but --

11         MR. DiGIACOMO:  Judge, is it fair to say then, in

12 light of what the Court has put on the record, that the Court

13 is not going to temporarily impose such a condition --

14         THE COURT:  No, I'm not going to temporarily impose

15 such a condition.  No.  And I appreciate the request.  And as

16 I said, you know, I'm -- and I know Mr. Warmus will rely on

17 defense counsel for -- to -- to decide what he can do and what

18 he can't do.  But, no, I'm not going to impose this now.

19         I'll read what you have to read, and decide what to

20 do after that.

21         MR. DiGIACOMO:  Thank you.

22         THE COURT:  Okay.  Anything more you want to do this

23 afternoon?

24         MR. DiGIACOMO:  Nothing from the government,

25 Your Honor.

1           THE COURT:  Anything more from probation this
2    afternoon?
3           USPO BOVA:  No, Your Honor.
4           THE COURT:  Anything more from the defense?
5           MR. TEXIDO:  Yes, Your Honor, just two brief things.
6           Number 1.  On the summons, it's listed as a petition
7    for probation violation.  And when we -- he was informed that
8    he had to be booked when we got here.  That's -- and so he was
9    booked, because we listen to what we're told.
10          But I guess my concern is this showing up on his
11   record as a violation of probation when it's, in fact, not.
12          THE COURT:  Yeah, I don't think it is a violation of
13   probation.
14          USPO BOVA:  It is not, Your Honor.  I'm not sure why
15   that was included on the summons.  I can follow up with the
16   clerk's office, maybe, but this is just a modification request
17   hearing.  There has been no violation.
18          THE COURT:  Yeah.  I asked for a summons to be
19   issued.  I didn't -- I didn't say anything about any
20   violation, so -- and you don't think there's a violation,
21   right?
22          MR. DiGIACOMO:  No, I've been -- no, the --
23          THE COURT:  So, I will say for the record, there is
24   no violation charged here.  Do you want me to do anything
25   more?

1          MR. DuBOIS: Well, Judge, the fact that he was booked
2  by, he was fingerprinted, and mugged, and DNA cross-referenced
3  about an hour ago. So we just want to make sure that if
4  someone were to do a criminal history on him, it's not going
5  to show that there was, in fact, a violation for which he was
6  booked for, because he technically got booked.
7          USPO BOVA: It is my understanding, Your Honor, that
8  individuals who come in for a summons do report to the
9  marshals to be processed. So if Your Honor would like, I can
10 follow up with the marshals and the clerk's office to see if
11 there's a resolution to this.
12         THE COURT: Yeah. Why don't you work with probation
13 and make sure that things are the way you would like them to
14 be because, no, he's not charged with a violation, and nor do
15 I think there should be any record that he was charged with a
16 violation.
17         MR. DuBOIS: Thank you, Judge.
18         MR. TEXIDO: And then, Your Honor, the final matter,
19 and I'm not sure how the Court wants us to go about with this,
20 so I'm going to put it out there.
21         There is a condition on his original conditions that
22 I think will be implicated by the arguments that are being
23 made by both sides here. That condition --
24         THE COURT: The condition imposed by Judge Friedman?
25         MR. TEXIDO: Yes. That condition reads that he not

1   enter a police station without prior court approval.  And

2   that's pretty much verbatim how it reads.  So --

3           The way it reads, number 1, if he's standing there

4   bleeding from a stab wound in the parking lot of a police

5   station, he can't walk in and report it, number 1.

6           Number 2.  I think the arguments we're making, the

7   First Amendment and policy arguments here, would apply to that

8   condition, as well.  I don't know if the Court would need us

9   to file a cross petition or a petition, or we can --

10          THE COURT:  Yeah.  So let's do this.  So let's do

11  this.  If you want to seek relief from a condition that's in

12  the conditions that Judge Friedman imposed, you've got three

13  weeks to do that.  The government has three weeks to respond

14  to that.  So we're just going to flip the schedule.  And then

15  you've got a week to reply.

16          And, again, we'll do the same thing with respect to

17  that.

18          MR. TEXIDO:  So on separate submissions, Your Honor?

19          THE COURT:  Separate submissions.

20          MR. TEXIDO:  Okay.

21          THE COURT:  Two separate submissions.  And don't make

22  them long, guys, they don't need to be --

23          MR. DiGIACOMO:  75, 100 pages?

24          THE COURT:  75 to 100, yeah.  Can we say 15?  Is

25  that -- a 15-page limit on everything?

1           MR. TEXIDO:  Yes, I think that will be more than
2    enough, Judge.
3           THE COURT:  Okay.  Terrific.
4           And if you have an alternative, I mean, I hear what
5    you're saying, and what you're saying makes some very
6    intuitive sense to me.  What I might do if I were in your
7    shoes is talk to the fellow on the other side of the aisle
8    before you make your submission because, you know, the
9    government and probation may very well agree to some
10   modification along the lines that you're talking about.  And
11   then you can ask me to do something more than that.
12          So you can say, look it, we've got an agreement that
13   if he's been stabbed and he's bleeding, he can go into a
14   police station to, you know, get himself taken care of, and
15   get the culprit chased down.  But in addition to that, Judge,
16   I'd like you to allow him to go into any police station for
17   any reason at all, and here's why.  You can do that, too.
18          MR. TEXIDO:  Okay.  Thank you, Your Honor.
19          THE COURT:  Okay?
20          MR. TEXIDO:  I appreciate that.
21          THE COURT:  Anything else?
22          MR. DiGIACOMO:  Nothing else from the government.
23          THE COURT:  Anything else from defense?
24          MR. DuBOIS:  No, Your Honor.
25          THE COURT:  Anything else from probation?

1        USPO BOVA:  No, Your Honor.
2        THE COURT:  Okay.  Thank you very much, everybody,
3   and maybe we'll see you in a few weeks.
4        MR. TEXIDO:  Thank you.
5        THE CLERK:  All rise.
6        (Proceeding concluded at 1:26 p.m.)
7        *       *       *       *       *

14                    **CERTIFICATE OF REPORTER**

16              In accordance with 28, U.S.C., 753(b), I
17  certify that these original notes are a true and correct
18  record of proceedings in the United States District Court for
19  the Western District of New York on February 10, 2023.

22                      s/ Ann M. Sawyer
                        Ann M. Sawyer, FCRR, RPR, CRR
23                      Official Court Reporter
                        U.S.D.C., W.D.N.Y.