UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

      Respondent

      vs.                   Case Number 1:22CR00184-001

DANIEL WARMUS,

      Petitioner.

## PETITION FOR RELIEF FROM CONDITION OF PROBATION

### BY

NICHOLAS T. TEXIDO, ESQ., and DANIEL J. DUBOIS, ESQ., attorneys for petitioner DANIEL WARMUS.

### PETITIONING THE COURT

For relief from a condition of his probation, namely that he refrain from entering any law enforcement property without prior court approval.

### PROCEDURAL HISTORY

On September 27, 2022, petitioner DANIEL WARMUS was sentenced in the United States District Court (Friedman, J.) upon his plea of guilty to Parading, Demonstrating, or Picketing in a Capitol Building, in violation of 40 U.S.C. §5104(e)(2)(G). He was sentenced to forty-five (45) days incarceration, followed by twenty-four (24) months of probation. The special conditions of probation included: $500 restitution, financial disclosure, sixty (60) hours of community service, removal of firearms, prohibition from entering Washington D.C. without probation officer approval, prohibition from entering law enforcement property without court approval. The allegations arose from his entering the Capitol Building on January 6, 2021. He was alleged to have entered the building and remained for approximately 16 minutes, harming no persons or property in the process.

On December 13, 2022, this Court accepted jurisdiction over his probation supervision. To date, petitioner has not violated probation in any way. He is gainfully employed and self-sufficient.

On February 3, 2023, his supervising Probation Officer filed a petition to add the following condition to the terms of his probation: "The defendant is prohibited from recording videos in or around county, state, or federal buildings. Furthermore, the defendant shall not record or post videos of public employees to social media accounts." A summons was issued, and was returnable on February 10, 2023. The petitioner appeared with counsel, opposing the petition, and the matter was scheduled for submissions. The Government's initial submission is due on March 3, 2023, the petitioner's response is due by March 24, 2023, and the Government's reply is due by March 31, 2023.

At the proceeding, counsel for petitioner raised the issue of the propriety and/or constitutionality of the existing condition prohibiting him from entering law enforcement property without court approval. The Court scheduled this matter for submissions, as follows: petitioner's petition is due by March 3, 2023, the Government's response is due by March 24, 2023, and the petitioner's reply is due by March 31, 2023.

Please accept this submission as petitioner's initial petition for relief from the condition of probation prohibiting him from entering law enforcement property without court approval.

### FACTS

Petitioner runs a successful auto repair business in Orchard Park, New York. He also runs a successful YouTube channel entitled "Auditing Erie County." The premise of petitioner's channel is that he enters public places, filming government officials and employees, and posts them to his YouTube channel. He posts positive interactions as well as negative ones; he is truly a neutral auditor.

Petitioner is well-aware of the relevant laws and rules governing his conduct, and has never once been arrested or charged due to his conduct. While, sometimes, the interactions get tense, many of the interactions are positive ones, and shed a positive light on the public officials who are being filmed.

Even the negative interactions have brought about positive change when public officials are receptive. For instance, in a letter received by the Court, the City of Elmira Police Department, by Chief Anthony A. Alvernaz, noted that he was audited on October 20, 2022 by "Auditing Erie County," and watched the video and read the posts and comments regarding the citizen complaint process. The Chief wrote, "We will now blend the two concepts (in-person and written complaints) in an attempt to mitigate future concerns about our complaint process."

Yates County Administrator Winona B. Flynn, after being audited by petitioner, wrote "This is invaluable feedback that allows us to improve our operations as we serve the public." Flynn noted that she is a believer in government transparency, and that petitioner was "professional, polite, courteous, and respectful."

Orleans County Chief Administrative Officer John C. Welch, Jr., after being audited by petitioner, wrote "Mr. Warmus as a first amendment auditor allows the County of Orleans to

have a third party observe how we truly interact with the public. This is invaluable feedback that allows us to improve our operations as we serve the public."

Petitioner continued his auditing activities while on pretrial release. In his pre-sentence report, the officer noted his activities and stated "To date, in reviewing automated PSADC records, the defendant appears to remain in overall compliance with the conditions of release, despite the above interactions with law enfocement."

## CAUSE

The condition prohibiting petitioner from entering police property without court approval should be stricken, both as a constitutional matter and for policy reasons. In short, the condition is counterproductive to the rehabilitation of petitioner and to the protection of society.

In imposing probation conditions, federal courts may only impose conditions that advance the simultaneous goals of rehabilitating a defendant and protecting the public. United States v. Tolla, 781 F.2d 29 (2d Cir. 1986). Once a court lawfully determines that a defendant should be placed on probation, its focus must not be guilt and punishment, but rather the above-stated goals of rehabilitation and protection. Id., at 33.

Here, the condition at issue advances neither goal. The public does not need protection from petitioner's auditing activities, as they are designed to advocate for the public rather than against it. As the above-cited letters indicate, those public officials who are receptive to valid criticism have valued petitioner's work. More importantly, members of the public who are served by those officials have no doubt benefited from his work.

This is especially the case with regard to this particular condition. The public need not be protected from any activities of petitioner that occur in a police station. By the nature of the activity, the police is on hand for immediate intervention should the need arise. However, inasmuch as petitioner knows and stays within legal bounds in his auditing and advocacy for Auditing Erie County, the need does not arise.

Nor does the condition advance the goal of petitioner's rehabilitation. As stated, he knows his legal limits and stays within them. This condition does not benefit him in any way, shape or form. An invaluable component of successful reintegration into society after a criminal conviction is the ability to support one's self and be self-sufficient. While this is not petitioner's main reason for auditing, this monetized YouTube channel, along with his auto repair business, does allow him to remain self-sufficient. In short, stripping a probationer of his means to earn a living does not advance the goal of rehabilitation; rather, it hinders the goal.

It is anticipated that the Government may argue that this prohibition, as well as their proposed prohibition on filming in any public building, protects petitioner from being accused of inciting others to do harm. However, petitioner does not, and has not, incited anyone to commit any illegal acts. If he is wrongly accused of doing so, he has able counsel who will address the issue. To prohibit him from engaging in lawful activity in order to prevent him from being wrongly accused of a crime is a fool's errand. Not to mention, a balance must be struck. To prohibit him

from driving an automobile would prevent him from ever getting a speeding ticket, but would also impede his productivity in society. Likewise, the condition at issue restricts too much in order to prevent an imaginary harm.

Moreover, it does not help anyone, probationer or not, to be barred from entering a police station without court approval. A police station is a place of public accommodation, and serves to provide a place of refuge and assistance to persons in emergency situations. It is inconceivable that prohibiting a person from entering such a place would benefit them. It is equally inconceivable that prohibiting that same person from recording their interaction, especially when they are on probation and the stakes of any violation are high.

While probation conditions may sometimes restrict otherwise lawful activities (see eg. Malone v. United States, 502 F.2d 554 [9th Cir. 1974] [IRA sympathizer convicted of gun running could lawfully be prohibited from associating with Irish political, cultural, or social organizations]), the conditions must bear a reasonable relationship to an actual rehabilitative or protection-based need. Tolla, 781 F.2d, at 34.

When the conditions bear directly upon the probationer's freedom to engage in otherwise protected activities, they must be especially fine-tuned to be deemed lawful. See, eg. Porth v. Templar, 453 F.2d 330, 334 (Tax protestor was lawfully prohibited from advocating that others violate tax laws, but could not be prohibited from expressing views as to the constitutionality of those laws).

Unusual probation conditions such as the one at bar are rare, but tend to garner scrutiny. United States v. Pastore, 537 F.2d 675 [2d Cir. 1975]. In Pastore, the Court listed a range of conditions that had been struck down, including: mandating donating blood, forced sterilization, banishment from the state, and the requirement of writing an essay on why the police should be afforded the respect of its citizens.

These decisions indicate that where a condition implicates a constitutional right, such as bodily autonomy, political speech, or the freedom to move about, it will be subjected to a higher scrutiny and a potential for being struck down. The condition at issue here, without a doubt, implicates the constitutional freedom of the press Themo v. NE Newspaper Publishing Co., 306 Mass. 54 (1940); cited by Neff v. Time, Inc. (406 F.Supp 858 [N.D.Pa. 1976) for the proposition that the constitutional privilege of the press applies to truthful reporting on matters of public interest, including police stations).

Moreover, audio and audiovisual recording have long been recognized as valid media of expression used to preserve and disseminate information, and thus, are "included within the free speech and free press guaranty of the First and Fourteenth Amendments." Burstyn v. Wilson, 343 U.S. 495 (1952). Laws that restrict the expressive use of media, especially the internet dissemination of same have obvious effects on the rights of free speech and free press. ACLU v. Alvarez, 679 F.3d 583 (7th Cir. 2012). Here, those concerns are even more heightened, as the reporting sought to be restricted is of an entity that exists by and for the public—police departments. Especially in current times, society understands the value of scrutiny of the police,

as evidenced by the advent of widespread mandatory use of body-worn camera and other protections.

While it is possible to conceive of situations in which constitutional rights may be restricted as valid conditions of probation, those types of conditions garner intensified scrutiny, as the line of cases cited in Pastore suggests. Here, the condition at issue has no reasonable relation to the crime committed. The January 6th event was an unusual one, wherein people, including petitioner, were caught up in the craze of an event of global magnitude. They unlawfully entered a building that was off-limits to the public, and some engaged in conduct that was dangerous and/or violent. Thankfully, petitioner engaged in no harmful conduct save for the unlawful entry and remaining for 16 minutes. In contrast, petitioner's conduct in entering the public areas of public accommodations to audit government officials' treatment of ordinary citizens is both lawful and, in most cases, laudable.

For all of the foregoing reasons, this Court should strike the condition of petitioner's probation that prohibits him from entering police stations without court approval.

March 2, 2023

Yours, etc.

s/ Nicholas T. Texido

NICHOLAS T. TEXIDO

s/ Daniel J. DuBois

DANIEL J. DUBIOS

Attorneys for Defendant-Petitioner DANIEL WARMUS