IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

THE UNITED STATES OF AMERICA

                                                                        22-CR-00184-V

    v

DANIEL WARMUS

## DEFENDANT/RESPONDENT'S RESPONSE TO GOVERNMENT'S SUBMISSION IN SUPPORT OF MODIFICATION OF CONDITIONS OF SUPERVISION

### *PROCEDURAL HISTORY*

On September 27, 2022, defendant-respondent DANIEL WARMUS was sentenced in the United States District Court (Friedman, J.) upon his plea of guilty to Parading, Demonstrating, or Picketing in a Capitol Building, in violation of 40 U.S.C. §5104(e)(2)(G). He was sentenced to forty-five (45) days incarceration, followed by twenty-four (24) months of probation. The special conditions of probation included: $500 restitution, financial disclosure, sixty (60) hours of community service, removal of firearms, prohibition from entering Washington D.C. without probation officer approval, prohibition from entering law enforcement property without court approval. The allegations arose from his entering the Capitol Building on January 6, 2021. He was alleged to have entered the building and remained for approximately 16 minutes, harming no persons or property in the process.

On December 13, 2022, this Court accepted jurisdiction over his probation supervision. To date, Warmus has not violated probation in any way. He is gainfully employed and

self-sufficient. On February 3, 2023, his supervising Probation Officer filed a petition to add the following condition to the terms of his probation: "The defendant is prohibited from recording videos in or around county, state, or federal buildings. Furthermore, the defendant shall not record or post videos of public employees to social media accounts." A summons was issued, and was returnable on February 10, 2023. Warmus appeared with counsel, opposing the petition, and the matter was scheduled for submissions. The Government's initial submission was filed on March 3, 2023, this response by WARMUS is due on March 24, 2023, and the Government's reply is due by March 31, 2023.

There is a concurrent petition filed by WARMUS to remove an existing special condition prohibiting him from entering police stations or police property without prior approval of the probation department. Many of the same issues and arguments are implicated here, and we ask the Court to consider all of the arguments made in that petition when deciding the instant petition.

## ISSUES TO BE ADDRESSED

In their submission in support of modification, the Government framed the issues as: (1) whether the Court has the authority to add a condition at this stage, and (2) whether adding the condition would violate the First Amendment to the United States Constitution. We agree that the Court has the authority to add conditions of supervised release as it sees fit, provided that those conditions comport with statutes, the goals of probationary sentences, and the Constitution. <u>See, United States v. Parisi</u>, 821 F.3d 343 (2d. Cir 2016). However, the defense argues that adding this particular condition would not advance any legitimate goals, and would violate the

First Amendment to the United States Constitution, specifically the freedoms of speech and press.

Moreover, the Government left out an important part of the Court's calculation: As the Court framed the issue, even if the Court *can* impose the requested condition, *should* the Court impose said condition? Therefore, contrary to the Government's assertion, the applicable issues at this point are: (1) whether the proposed condition of supervised release would be violative of the First Amendment to the United States Constitution, and (2) even if it would not violate that Amendment, whether the Court *should* impose said condition. For all of the reasons that follow, the Court should find the proposed condition unconstitutional, and also should not impose it even if the Court finds it to be constitutional.

## *FACTS*

In its "Background" section of its submission, the Government makes several factual assertions that are inaccurate and must be corrected. It is true that Warmus pleaded guilty to Parading, Demonstrating, or Picketing in a Capitol Building in contravention of 40 U.S.C. §5104(e)(2)(G) and was sentenced to forty-five (45) days incarceration followed by twenty-four (24) months of probation. The plea was in relation to his entering the Capitol Building with others on January 6, 2021 and remaining for approximately sixteen (16) minutes, harming no persons or property in the process. In addition to the general conditions of supervision, the sentencing Court imposed several special conditions with which Warmus takes no issue: (1) $500 restitution, (2) financial disclosure, (3) sixty (60) hours of community service, (4) removal of firearms, and (5) prohibition from entering Washington D.C. without probation officer approval.

In addition to those special conditions, an additional condition was imposed barring Warmus from entering law enforcement property without court approval. We have taken issue with that condition, and filed a petition for relief from it on March 3, 2023.

Throughout its submission, the Government mischaracterizes the nature of Warmus' work, stating that he has "manufactured disturbances" by conducting "so-called government 'audits.'" These mischaracterizations culminate with the Government alleging that Warmus earns money "by posting sensational videos on YouTube in order to obtain views. The more sensational the video, the more views are generated. The more views generated by Warmus the more ad revenue Warmus makes for himself." These incorrect assertions by the Government show that they did not take the time to watch his videos nor to independently and fairly assess his work.

Contrary to what the Government alleges, Warmus posts both positive and negative interactions. There are typically two types of constitutional auditors: those who post only negative interactions and uncomfortable situations for "views," and those who fairly and accurately hold public officials accountable by filming interactions, giving criticism where it is due and also giving credit where it is due. An honest and thorough view of Warmus' channel clearly indicates that he is of the latter category.

For instance, a recent video posted by Warmus depicts an encounter on February 23, 2023 at the Pembroke Town Clerk's Office. The video is entitled "I Respect Your Rights! Let me flip my papers over. Pembroke, NY First Amendment Audit" contains the following caption:

> This is a First Amendment Audit of the Pembroke, NY Town Hall on February 23rd 2023. We went in to exercise our rights in the Town Clerk's office. And the Clerk had no problems with us exercising our Right and fully understood it was on her to cover up personal information without restricting the Erie County Fam's RIGHTS! 2 THUMBS UP for Pembroke!

Hardly a "manufactured disturbance," Warmus gave credit to Pembroke Town Clerk officials for their respect of citizens' First Amendment rights. The video has been watched over 10,000 times, and the commenters all laud the polite and kind government worker for her interaction with a taxpaying citizen.

Another video, viewed over 17,000 times, depicting an audit of Newfane, New York depicts an extremely positive interaction and contains the caption:

> This is a First Amendment Audit of Newfane,NY on February 14th. If all first amendment Audits went this way we could be proud! I know pass Audits are not as exciting as crazy fail videos but we all know deep down inside this is the goal for how we'd like to think they should all go!

Similarly, in a video posted on January 31, 2023, prior to the instant petition being filed, and viewed over 18,000 times, Warmus lauds Cattaraugus County Officials for their treatment of him while in their government building. He notes in the caption:

> This is a First Amendment Audit of the Cattaraugus County Building on November 1st 2022. I originally went to do a FOIL request for the Sheriff hitting the Amish Buggy I heard about in the news, but found out I was at the wrong County! Lol The Sheriff car rear-ending the Amish Buggy happened in Chautauqua County. The link is below. The First Amendment audit on Cattaraugus County Building has to be one of the most easy going and best Pass Audits I have ever done. I literally felt like I Owned the building and not one person gave the Erie County Fam a problem. Well Done Cattaraugus County!

Again, it is clear that the Government, prior to making its assertions, did not bother to watch the videos posted to the channel. Warmus is the type of auditor who hopes for positive interactions and gives credit where it is due.

In fact, Warmus' page is littered with both positive and negative interactions, both "passes" and "fails" of his audits. He has lauded the jurisdictions of: Arcade, Livingston County, Lewiston, Lancaster, the West Seneca Department of Motor Vehicles, among other governmental agencies. Even more problematic to the Government's assertion that Warmus "manufactures

disturbances" for "views" are the letters previously submitted to the Court by Yates County, Orleans County, and the City of Elmira Police Department, in which they thank Warmus for his work in holding them accountable and note the positives that have come from his work in their jurisdictions.

When government officials fail to respect their constitutents' First Amendment rights, Warmus no doubt points that out as well.  Some of those officials who "fail" the audits take the criticism constructively, while some respond by taking umbrage and attempting to ban and silence him.

Which brings us to the Jeremy Toth affidavit.  Upon information and belief, Toth's complaints following Warmus' lawful entry into his Erie County Attorney Office were the impetus for the Probation Department's filing of this petition in the first instance.  It was clear at the February 10, 2023 court appearance that this Court had watched the video in question and saw that Warmus violated no laws and was merely exercising constitutional rights.

Early in Toth's affidavit, he acknowledged that his Office's front desk area is accessible to the public, stating that "throughout the day, multiple people who do not work for the County Attorney's Office are granted entry to complete legal service." *Toth Affidavit*, pgph 2.

Warmus entered to file a FOIL request.  Toth provided Warmus with a blank sheet of paper and a pen, accepted the FOIL request, but in a very petty fashion, refused to make a copy of the filed request.  His refusal frankly begged the question: Why provide a sheet of paper and then refuse to make a copy?  To be sure, this is a government office funded by taxpayers, and Toth repeatedly refused to copy a single sheet of paper that was being filed as a FOIL request.  Contrary to Toth's assertion in paragraph 12 of his affidavit, Toth never suggested that Warmus

instead take a picture of the filed request, but instead devoted all of his energy to refusing a very reasonable request to make a simple copy.

The majority of the Toth affidavit is dedicated to correspondence and telephone calls he received after the interaction was posted to YouTube. As a government official, Toth should be held to answer to his constituents, so the vast majority of the correspondence he received was protected and warranted. However, he should not be threatened in any way. In no way, shape, or form may any threats or otherwise untoward comments made by other people be attributed to Warmus. In fact, Warmus admonishes and reminds all of his viewers *not* to make threats. Accordingly, in the caption of each video, the Toth video included, Warmus warns his viewers of the following:

> ☆☆Everyone Remember ☆☆ if you choose to redress your grievance to your government or public servants witch IS your Constitutional Right. Remember there is a Fine Line from Redressing your Grievances and making any THREATS! YOU DO NOT REPRESENT AEC Or the movement of accountability if you make any threats! That is a crime and NOT supported in any way.

Warmus could not be any more clear in his assertion, posted with every video, that while redressing grievances is desirable and can lead to positive change, threats are illegal and neither encouraged nor condoned.

Finally, Toth attached a PowerPoint of a seminar he attended after the interaction in question. The PowerPoint is mostly fair, encourages public officials to treat their constituents and auditors with respect, and concludes with the proviso "Remain calm and respectful. Remember boring encounters equals boring social media posts." Perhaps had Toth attended this seminar prior to the interaction and heeded the presenter's advice, he would not have been criticized for the interaction. In short, the Toth interaction is a prime example of why First

Amendment audits exist. However, instead of changing practices and seeing his constituents' point of view, Toth (upon information and belief) chose to request the instant petition in an attempt to prevent Warmus from bringing these types of interactions to light.

To the extent that the Government attempts to attribute a call to Toth's home and his wife's work to Warmus, it must be noted that Warmus only gives the information of the government office, and not personal information. He also provides the above-mentioned warning against threats. He cannot be held personally responsible in any way, shape, or form for any actions that he has specifically asked people not to commit.

In addition to the Toth interaction, the Government cites other interactions in its submission for their assertion that the public needs protection from Warmus. In each and every one of the cited interactions, however, Warmus committed no unlawful conduct and the public officials overstepped or were just plain wrong. For instance, the Government cites an instance from April 15, 2022 in which Warmus was detained by the Erie, Pennsylvania Police Department. Viewing the video of that interaction, it reveals that he was merely taking photographs of parked police cruisers and documenting the maintenance and cleanliness of the vehicles. A police officer saw a fingerprint on her personal vehicle and assumed it was Warmus' fingerprint, even though he had never gone near the row of vehicles that were personal. They detained him for 53 minutes, and then released him. He was never charged because he committed no crime.

The Government cites an interaction on August 26, 2022 with the Rochester City Hall, alleging that he "attempted to enter personal offices of Rochester City employees." A simple viewing of the video reveals that he only entered publicly accessible areas, and never once attempted to enter a non-accessible area.

Notably, in its submission, the Government does not address the many positive interactions for which Warmus gave praise to government officials, nor the interactions that started off as negative interactions, but led to positive policy changes once officials became educated on the law.  Looking at Warmus' work as a whole, the Government's assertion that Warmus is intentionally causing disturbances for financial gain rings hollow.  He exalts when officials act in a manner that is respectful to the rights of their constituents, and posts those interactions conspicuously on his page.  Were he merely intentionally causing disturbances for "views," those positive interactions would be seen as failures and discarded, rather than held out as shining examples of the way government officials should treat their citizens.

Finally, the Government attempts to paint the monetization of the channel in a negative light.  To the contrary, and as will be discussed in the "Argument" section below, Warmus' earning of a living *advances* the rehabilitative goal of a probationary sentence.  Warmus does not hide from the fact that his channel is successful and that it helps him to support himself.  His self-support and success at earning a living is a positive rather than a negative.  To strip him of his income would be detrimental to the permissible goals of a probationary sentence.

Contrary to the tenor of the Government's submission, an honest and thorough review of Warmus' work reveals that it is not aimless rabble-rousing for the sake of "views," but rather that it is constitutionally-protected, lawful activity that is designed for the betterment of government treatment of citizens.  Many of the interactions are positive, and Warmus posts them with gratitude.  Some of the negative interactions lead to positive change.  The interactions depicted in the videos reflect a healthy push-pull dynamic between a government and the citizens to which it is accountable.

## ARGUMENT

The proposed condition would be an unlawful infringement upon Warmus' First Amendment rights, and by extension and by its very nature, would impede the First Amendment rights of all citizens. It must be noted that, while most of the arguments revolve around Warmus' First Amendment rights, those are the same rights that he seeks to ensure exist for every other citizen through his audits.

While we generally agree with the applicable law as stated by the Government, the disagreement is in the application of that law to the facts and circumstances herein.

As a preliminary matter, the Government correctly notes that a court "may modify, reduce, or enlarge the conditions of supervised release." However, it is equally true that those conditions must only be ones that advance that simultaneous goals of rehabilitating a defendant and protecting the public. United States v. Tolla, 781 F.2d 29 (2d. Cir. 1986). While incarcerative sentencing advances several other goals, the focus of a Court sentencing a defendant to probation are explicitly limited. The focus must not be upon guilt and punishment, but rather upon rehabilitation and protection. Id.

The Government fails to address how stripping a probationer of his income, which he earns by engaging in lawful activity for which he has passion and energy, would advance the goal of rehabilitation. To the contrary, gainful employment is a bedrock of successful reintegration into society following a criminal conviction. For one, idle hands are the devil's tool. Common sense and experience in dealing with convicted individuals tells us that those who are not employed, or are not fulfilled in their employment, are at a higher risk of recidivism. Secondly, the ability to support one's self financially is a necessary precondition of

rehabilitation. This Court undoubtedly sees countless individuals who are either reluctant to or struggle to find and maintain gainful employment. Those individuals commonly find themselves back in the system. Taking away a legitimate source of income from a probationer does nothing to advance the goal of rehabilitation; rather it thwarts that goal.

The Government devotes much of its submission to criticizing Warmus for earning a living by doing his work. But at no point do they explain how taking away a source of income and self-sufficiency would advance the goal of rehabilitation. It cannot be argued in any credible fashion that it does.

At the February 10, 2023 court appearance, the Government insinuated that placing this condition would *help* Warmus because it would prevent him from being arrested for violating his probation, and thus advance rehabilitative goals. As noted however, Warmus knows his legal rights and the relevant laws and acts within them. There has been no allegation that he has violated any federal, state, or local law in conducting First Amendment audits. Were he to be arrested for First Amendment auditing, that arrest would be unlawful, would not result in a conviction, and would not result in a probation violation. By the Government's logic, every probationer should be on house arrest so they may avoid an arrest, unlawful or otherwise. But that logic is flawed, as successful rehabilitation requires *reintegration* into society. Probation conditions that are too conservative or restrictive actually prevent successful rehabilitation. And this particular condition, which would curtail constitutional rights while negatively impacting Warmus' ability to earn a living, is contrary to the rehabilitative aim of a proper probationary sentence.

Nor does the proposed condition promote the goal of public safety. The public need not be protected from auditing activities; rather, they are served by those activities. While some

people may step over lines, that is not due to Warmus, who, as noted above, warns all of his viewers not to make any threats. He denounces those activities and the persons who engage in them. And this was the case long before the instant petition was filed. Halting his lawful, peaceful, and constitutionally-protected activity bears no nexus, not even the most tenuous, to achieving the goal of protecting the public.

Moreover, not every auditor is on probation. Halting Warmus or other probationers from auditing will not stop audits generally. The concerns of the Government that some individuals – not named Daniel Warmus -- overstep and make threats or otherwise break the law will still exist whether audits are conducted by Warmus or whether they are conducted by another individual who is not on probation (who could not lawfully be restricted from the same activites). Thus, the proposed condition, placing a limitation on constitutionally-protected activity, would do nothing other than to harm Warmus and his ability to earn a living and support himself while also having a negative impact on citizens' ability to hold government accountable.

In addition to the proposed condition running afoul of the rule set forth by the Second Circuit in *Tolla* that conditions must advance rehabilitation and/or public safety, the condition would also be unconstitutional, as it is not narrowly tailored to achieve a permissible goal. The Government does not argue, nor could it credibly argue, that the activities engaged in by Warmus, including posting the interactions on the internet, are not constitutionally protected First Amendment activities. Indeed, they are. *See, ACLU v. Alvarez*, 679 F.3d 583 (7th Cir. 2012). Furthermore, as the Government readily concedes, "[i]t is undisputed – indeed beyond dispute – that a person on supervised release retains some First Amendment rights." *United States v. Bolin*, 976 F.3d 202, 214.

To be sure, those rights may, in some instances, be limited during supervised release, but as the Government acknowledges, any such limitation must involve no greater deprivation of liberty than is reasonably necessary. Where conditions of supervised release limit or curtail a constitutional right, they must be subjected to heightened scrutiny. *United States v. Soltero*, 510 F.3d 858, 866 (9th Cir. 2007) ("While a court's discretion to set conditions of supervised release is broad even when those conditions affect fundamental rights, restrictions on fundamental rights are reviewed carefully"). A condition affecting a fundamental right is valid only if it involves no greater deprivation of liberty than is necessary to achieve the stated goals. *Id.*; *United States v. Myers*, 426 F.3d 117 (2d. Cir. 2005). "If the liberty interest at stake is fundamental, a deprivation of that liberty is 'reasonably necessary' only if the deprivation is narrowly tailored to serve a compelling government interest." *Id.*, at 126.

Thus, the test, in incorporating the "narrowly tailored" statute, is akin to the strict scrutiny test under which constitutional deprivations are measured. Here, it cannot be said that a blanket prohibition on filming and posting government officials' activities in government settings is "narrowly tailored" to achieve any legitimate goal, much less a "compelling government interest". To the contrary, it is a broadly-tailored prohibition that is aimed toward the convenience of government employees who do not wish to be criticized for their sometimes untoward conduct toward civilians. The Government, in its submission, does not identify a "compelling government interest" to which this proposed condition is narrowly tailored, and thus, to impose said condition would be unconstitutional. There is, however, a compelling interest in transparency, which would be negatively impacted by imposition of the proposed condition. Moreover, any assertion that Warmus is engaging in any activity that is unlawful is belied by the fact that he is posting the interactions on the internet, for all including law

enforcement to see. Surely, if his actions were so deplorable and unlawful, he would have been charged due to the video evidence that he himself broadcasted to the world.

The Government argues that the proposed condition is sufficiently narrowly tailored, in that it does not restrict Warmus from holding government officials and employees accountable. They reason that he can still speak his mind and voice his views in other forums and in other ways. However, it is the popularity of his channel and the breadth of his viewership on the internet that, in fact, holds the government accountable to its citizens. Without his channel, which he has been cultivating for over two years, he loses his platform. In the past 28 days, viewers from across the globe have watched his channel for 157,800 hours, which is 18 years of view time. In a 28-day span. Clearly, there is a demand for his holding the government accountable, and to remove that would be a disservice to him and to the public he serves. It would not only thwart his First Amendment freedom of speech and press, but would also negatively impact accountability of government in a more general sense.

It is beyond dispute that showing people what happens is more powerful than telling them what happens without video evidence to back it up. It is for that reason that audio and video recording have been recognized as included within the free speech and free press clauses of the First Amendment for over 70 years. Burstyn v. Wilson, 343 U.S. 495 (1952). To say that Warmus can simply start a radio show where he talks about his opinions is disingenuous.

Finally, it should be noted that, even if this Court finds that it *could* lawfully impose the condition at issue, it is not required to do so. As the Court is aware, it should, indeed must, exercise its own discretion in imposing special conditions. It need not even be said that the Court is not required to impose every and any condition that it may lawfully impose. At the risk of beating a dead horse, we urge the Court to consider all of the arguments set forth above as

reasons that it should not, in its discretion, impose the requested condition even if it feels that it would be lawful to do so. Imposition of the requested condition would negatively impact Warmus' livelihood while also unnecessarily infringing on his First Amendment rights.

## CONCLUSION

**The Probation Department and the Government seek a blanket prohibition on DANIEL WARMUS' recording and posting of interactions with government employees and officials performing government duties in government settings. To grant such a condition would: (1) violate Warmus' First Amendment rights, even as a probationer, as the condition is not narrowly tailored to serve a compelling governmental interest, (2) tend to thwart the goal of successful rehabilitation and reintegration by negatively impacting his livelihood, and (3) have no positive impact on public safety. Moreover, even if this Court could conceivably impose such a condition, it should decline to do so in its discretion.**

Dated: March 23, 2023


By: /S/ Nicholas T. Tuxedo

NICHOLAS T. TEXIDO

/s/ Daniel J. DuBois

DANIEL J. DUBOIS


Attorneys for DANIEL WARMUS