UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

      Respondent

                        vs. Case Number 1:22-CR-00184-001

DANIEL WARMUS,

      Petitioner.

## REPLY TO GOVERNMENT'S OPPOSITION TO RELIEF FROM SPECIAL CONDITION OF SUPERVISED RELEASE

### BY

NICHOLAS T. TEXIDO, ESQ., and DANIEL J. DUBOIS, ESQ., attorneys for petitioner DANIEL WARMUS.

### PETITIONING THE COURT

On March 3, 2023, we petitioned this Court for relief from a condition of his probation, namely that he refrain from entering any law enforcement property without prior court approval. The Government responded on March 24, 2023, and this is the final reply to that response.

N.B. The procedural history is fully set forth in our petition for relief from the special condition. Dkt. 9.

As set forth below, the special condition should be removed.

## INTRODUCTION

As an initial note, it is becoming readily apparent that the issues raised in the Government's Petition to add a special condition that Warmus refrain from recording in or around any public buildings are nearly identical to the issues raised here.

The contested issues appear to be as follows: (1) Can the Court, without running afoul of the First Amendment freedoms of speech, press, and assembly, as well as statutory guidelines, impose conditions that restrict Warmus' ability to appear in, conduct business in, and record and post his interactions in public buildings?, and (2) Even if the Court can do so, should it do so as a matter of policy and in its discretion?

## LEGAL STANDARD

The controlling law appears not to be at issue. The parties agree that, as the Court overseeing Warmus' supervised release, this Court add, delete, or modify conditions in its discretion, provided that any conditions comply with constitutional and statutory law. United States v. Parisi, 821 F.3d 343 (2d. Cir 2016). Unlike upon appellate review of conditions, this Court owes no deference to any other Court, and may (must) exercise its own discretion.

The parties further agree that the rights sought to be curtailed by the special conditions are rights of a First Amendment nature and are, thus, "fundamental" rights. Indeed, the Government makes no assertion or argument to the contrary.

The parties further appear to agree that where conditions of supervised release limit or curtail a constitutional right, they must be subjected to heightened scrutiny. United States v. Soltero, 510 F.3d 858, 866 (9th Cir. 2007) ("While a court's discretion to set conditions of supervised release is broad even when those conditions affect fundamental rights, restrictions on fundamental rights are reviewed carefully"). Furthermore, both parties agree that a condition affecting a fundamental right is valid only if it involves no greater deprivation of liberty than is necessary to achieve the stated goals. Id.; United States v. Myers, 426 F.3d 117 (2d. Cir. 2005). "If the liberty interest at stake is fundamental, a deprivation of that liberty is 'reasonably necessary' only if the deprivation is narrowly tailored to serve a compelling government interest." Id., at 126.

The disagreement between the parties lies in whether the special condition prohibiting entry onto police property without prior court approval (and the Government's proposed condition that the defendant be barred from videotaping in or around public buildings and posting those recordings) are "narrowly tailored to serve a compelling government interest." And finally, the parties disagree on whether, even if the Court *may* impose the Government's proposed condition and leave the existing condition in place, the Court *should* impose/keep those conditions.

While the special condition relating to police property currently in place is the subject of this Reply, the issues raised certainly touch on issues related to the Government's petition to add the special condition relating to recording on government property and/or posting on the internet. It is becoming apparent that the two cross-petitions are intertwined and mostly implicate the same concerns.

**DUE PROCESS**

The existing condition at issue in this reply is as follows: *"You are prohibited from entering law enforcement property without prior permission from the court."*

As a preliminary matter, an issue with this condition is obvious: it prevents Warmus from entering law enforcement property **for any reason whatsoever** without Court approval. Instead of solving this initial and palpable issue by consenting to or suggesting an amendment, the Government alleges "The restriction would not prevent WARMUS from obtaining emergency services… Of course, if there was an emergency, WARMUS could seek assistance from law enforcement as necessary. The special condition simply prevents WARMUS from creating a disruption and videotaping the disruption for publication on YouTube for money." Dkt. 12.

We fail to see how the condition, as written, compels the conclusion that Warmus could seek assistance from law enforcement if there was an emergency. Nothing in the condition permits that conclusion to be drawn. In an attempt to cure this obviously overbroad condition, the Government submits an affidavit of Warmus' Supervising Officer indicating that he would not violate Warmus for seeking such assistance.

However, the Government's position begs the question: Who determines what constitutes an "emergency"? If Warmus is robbed at gunpoint but is no longer in any immediate danger, may he walk into a police station to report said robbery? If there is a motor vehicle accident outside, but Warmus is unsure if any injuries were sustained, may he walk into a police station to report it?

If Warmus witnesses a crime and is asked to give a statement, may he accompany police to give the information? Moreover, it is unclear whether, and in what circumstances, the Probation Officer's vow to not violate him for certain vaguely unspecified behaviors would be binding upon that Officer. The Officer's promise surely would not be binding upon this Court.

It is for this very reason that "a probationer has a due process right to conditions of supervised release that are sufficiently clear to advise him of what conduct will result in his being returned to prison." United States v. Guagliardo, 278 F.3d 868, 872 (9th Cir. 2002). Here, in attempting to cure an obviously infirm and overbroad condition, the Government has now created a clear due process problem. If anything, this underscores the reasons why the contested conditions should not be imposed or maintained in the first instance.

### RESPONSE TO GOVERNMENT'S ARGUMENTS AND FACTUAL ASSERTIONS

The Government argues, as it consistently has, that Warmus' main motivation in conducting audits is to create disturbances and post those disturbances for attention and monetary gain. Indeed, this flawed factual assertion is *necessary* to the Government's argument that the conditions at issue are narrowly tailored to serve a compelling governmental interest. If Warmus is simply exercising constitutional rights and promoting and advancing the rights of others, the Government's assertion of a "compelling governmental interest" falls apart at the seams.

A simple viewing of Warmus' Auditing Erie County page belies the Government's view. Rather, the page indicates that Warmus fairly audits governmental agencies to assess compliance

with First Amendment rights of its citizens. While this does not suit the Government's argument of a compelling interest, it is undoubtedly the case. We need not again go through the countless positive interactions that were posted, nor the negative interactions that incited positive change. Suffice it to say that those exist and are regularly posted. Not every governmental employee is a Jeremy Toth. As Warmus and many other people have observed, there are two types of auditors: those who, like Warmus, fairly assess compliance and post both positive and negative interactions, and those who rabble-rouse for likes, follows, and subscribers. Likewise, there are two types of governmental officials: those who recognize that they are, in essence, employed by their constituents and are receptive to criticism, and those who seek to silence their critics and rule with a proverbial iron fist.

If Warmus belonged to the brand of auditors that primarily engages in meaningless rabble rousing, the Government would have a point (but would still have an uphill battle given the unquestioned legality and constitutionally-protected nature of the activities). However, a fair and thorough viewing of his work indicates that he belongs to the more honest and fair category of auditors. In short, there is no compelling governmental need to silence Daniel Warmus.

The Government cites 18 U.S.C. §3563(b) for the proposition that occupational restrictions may be imposed in certain cases. However, when the restrictions implicate fundamental rights, those conditions still must conform with the constitutional requirement that they are narrowly tailored to serve a compelling government interest. Thus, the factors in 18 U.S.C. §3563(b) are in effect subrogated by the constitutional requirements in this matter.

In any event, a viewing of that statute, and the other relevant statutes, militates against imposing/maintaining the conditions at issue. Section 5F1.5 states:

>(a) The court may impose a condition of probation or supervised release prohibiting the defendant from engaging in a specified occupation, business, or profession, or limiting the terms on which the defendant may do so, only if it determines that:
>
>(1) A reasonably direct relationship existed between the defendant's occupation, business or profession and the conduct relevant to the offense of conviction; and
>
>(2) Imposition of such a restriction is reasonably necessary to protect the public because there is reason to believe that, absent such restriction, the defendant will continue to engage in unlawful conduct similar to that for which the defendant was convicted.
>
>(b) If the court decides to impose a condition of probation or supervised release restricting a defendant's engagement in a specified occupation, business, or profession, the court shall impose the condition for the minimum time and to the minimum extent necessary to protect the public.

Thus, in order to sustain the conditions at issue, they must bear a reasonably direct relationship to the conduct relevant to the offense of conviction (in addition to passing the narrowly tailored to serve a government interest test). The offense of conviction revolved around Warmus entering a government building he was not allowed to be in. In none of his auditing activities does Warmus engage in said conduct. Moreover, the Government fails to establish but the most tenuous connection between the conviction and the activity they seek to bar. The conduct relevant to the conviction involved a large group of people descending upon the Capitol and unlawfully entering a building. There was no indication, and there is no suggestion by the Government, that Warmus was videorecording the events as they unfolded on that fateful day. There is no suggestion that he posted same to the internet. By contrast, the conduct they now seek to bar involves Warmus lawfully going into publicly accessible places and documenting what he sees, posting those interactions and services on the internet for all to see. There is no logical nexus between the charged conduct and Warmus' lawful and constitutionally-protected conduct that the Government seeks to prohibit.

Looking at subsection (2), there is no indication that Warmus' auditing activities would lead to another entry into the Capitol Building or any other restricted governmental zone. Again, any such assertion is tenuous and speculative at best, misleading at worst. And viewing subsection (3), the legislature apparently recognizes that such occupational restrictions are generally not advisable—they are to be imposed for the minimum time and to the minimum extent necessary to protect the public.

As has been belabored in several submissions now, there is no necessity to protect the public from Daniel Warmus. He acts as a public steward and seeks to ensure First Amendment rights for all citizens. While the Government may not agree with his methods in doing so, those methods are lawful and constitutionally protected. As a citizen, this writer is thankful for people like Warmus who are willing to risk uncomfortable situations to ensure that citizens' rights are protected. The Government's support for the conditions at issue reeks of a desire to silence a person who holds governmental offices and officials accountable. At the very least, it creates an appearance of content-based discrimination.

The Government, in arguing that the public needs protection from Warmus, argues that the posted videos caused harassing and threatening correspondence to government officials. As noted in previous filings, however, Warmus posts with every video an admonition NOT to engage in such activity. It is not Warmus from whom the public needs protecting. Were he to incite his followers to such conduct, as the Government suggests, surely he would be liable for, and charged with, criminal conduct—or a violation of supervised release at the very least. With the amount of effort the Government has devoted to attempt to impose and maintain these conditions, they would no doubt jump at any colorable opportunity to call any wrongdoing on his part to this Court's

attention. They have not, because there is none. In short, Warmus should not be punished or restricted for the conduct of others, especially where he explicitly admonishes others not to engage in said activities.

The Government next asserts that "It is reasonable and rational to prevent WARMUS from engaging in such conduct to encourage his rehabilitation and to protect the public. WARMUS needs to learn that 'disrupting' government businesses to make money on YouTube is not the same as serving as a government 'watch-dog.'" These inflammatory assertions have no basis in fact. First, the Government offers no logical support for their statement that the public must be protected from Warmus. As noted above, there is no logical support to be offered for that proposition. Secondly, what one calls a disruption, others may call an audit or a test. Maybe some "disruption" is a positive, as many of Warmus' interactions have led to positive change, better treatment of and services for constituents, and eventual gratitude of civic leaders. And finally, as noted many times, his primary motivation is not to earn income and generate likes. If that were the case, he would post only the audits that end negatively, which, as the Government correctly notes, tends to generate more views. Warmus' elation at positive interactions and positive feedback of governmental officials who respect First Amendment rights belie the Government's claim that the page is some type of grifting attempt to generate views and get rich.

The Government next cites a case, upon appellate review with an abuse of discretion standard, in which the Second Circuit declined to strike a condition imposed by the trial court. <u>United States v. Hurtado</u>, 756 Fed.Appx.63 [2018]. Unlike the Second Circuit in <u>Hurtado</u>, this Court is the one required to exercise its discretion (within constitutional limitations) in the first instance. It should be noted that the defendant in <u>Hurtado</u> was on probation for defrauding people of millions of dollars, was still engaging in questionable business practices, was living lavishly,

and was not paying restitution. It should further be noted that the occupation in <u>Hurtado</u>, unlike the one here, was not conduct that was, in and of itself, constitutionally protected conduct. Thus, it was not subject to the 'narrowly tailored to serve a compelling government interest" standard.

As the Second Circuit has noted, while trial courts have broad discretion to fashion conditions, the Court will "carefully scrutinize unusual and severe conditions, such as one requiring the defendant to give up a lawful livelihood." <u>United States v. Cutler</u>, 58 F.3d 825, 838 (2d. Cir. 1995). That is presumably because a key factor in rehabilitation is the ability to earn a living and be self=sufficient. Here, the conditions at issue serve to hamper the probationer's livelihood.

The Government also avers that "common sense" indicates that Warmus' rehabiliatation is proceeding poorly. Again, there is no support for this assertion. Warmus is self-sufficient, and has broken no laws whatsoever since his conviction. He does not use drugs, and does not drink alcohol. He is not on any form of public assistance, and spends his days engaging in lawful activities. While the Government is apparently unhappy with his work, he provides a vital service for the Government's employers—its citizens.

As is specifically relevant to this Reply, the bar on even entering police property, whether he is recording or not, is overly broad. The Government has spent three submissions demonizing Warmus for earning a living. The condition at issue in this particular petition has nothing to do with Warmus recording and posting; rather, it is a blanket prohibition on even entering police property. Again, there is no logical connection between Warmus entering a publicly accessible area to conduct a First Amendment audit and the conduct for which he was convicted—unlawfully entering the Capitol building. There is no indication that he was conducting a First Amendment

audit on January 6, 2021, and the Government appears to disavow any theory that he was.

That all being the case, the current bar on entering police property without court authorization, just like the proposed bar on recording in public buildings and/or posting those recordings, are not narrowly tailored to further a compelling governmental interest. Rather, they have no connection to a governmental interest, and are not tailored in the least.

As a final note, and relevant to both petitions, the Supreme Court has taken occasion to examine the First Amendment implications on internet restrictions. Packingham v. North Carolina, 582 U.S. 98 [2017]. In that case, the High Court struck down a North Carolina law that prohibited sex offenders from accessing or posting on social media sites. The Court eloquently stated:

> By prohibiting sex offenders from using those websites, North Carolina with one broad stroke bars access to what for many are the principal sources for knowing current events, checking ads for employment**, speaking** and listening in the modern public square, and otherwise exploring the vast realms of human thought and knowledge. These websites can provide perhaps the most powerful mechanisms available to a private citizen **to make his or her voice heard**. They allow a person with an Internet connection to **become a town crier with a voice that resonates farther than it could from any soapbox.**
> In sum, to foreclose access to social media altogether is to prevent the user from engaging in the legitimate exercise of First Amendment rights. It is unsettling to suggest that only a limited set of websites can be used even by persons who have completed their sentences. Even convicted criminals—and in some instances especially convicted criminals—might receive legitimate benefits from these means for access to the world of ideas, in particular if they seek to reform and to pursue lawful and rewarding lives. Id.; emphasis added.

The Packingham decision underscores some important points. At the risk of a pun, it is worth unpacking. First, the Supreme Court recognized that the ubiquity of the internet renders it a powerful tool for receiving information and an even more powerful tool for disseminating information. The fact that the information at issue here is information that the Government wishes

to silence perhaps makes it that much more protected and valuable. Second, the level and type of scrutiny on such a restriction is evident. If North Carolina cannot lawfully prohibit sex offenders from using social media sites, surely this Court should not prohibit Dan Warmus from Buffalo from using YouTube to disseminate constitutionally-protected information. And finally, a goal of the criminal justice system is to allow convicted persons to "pursue lawful and rewarding lives," using the internet as a tool for receiving and distributing lawful information in pursuit of that goal.

It is for all these reasons that this Court must follow statute, case law, and the First Amendment to the United States Constitution, and grant Warmus' petition to strike this extraordinary, overbroad, and illogical special condition. For the same reasons, the Court must decline to impose the draconian condition that the Government suggests. Moreover, even if the Court finds that it theoretically *could* impose/maintain these conditions within constitutional bounds, we ask the Court to look within itself while exercising its discretion and ask: Should I? When considering all of the relevant factors: the unnecessary impingement on a fundamental right, the tenuous at best rational nexus between the charged conduct and the conduct sought to be prohibited, the lack of any meaningful impact of such measures on public safety, and the goal of rehabilitation--to which the ability to pursue happiness and fulfilment while earning a living is key--this Court should exercise its discretion and allow Warmus to engage in this constitutionally protected activity while he serves his period of supervised release.

## CONCLUSION

For all of the foregoing reasons, this Court should strike the condition of Warmus' probation that prohibits him from entering police stations without court approval, and should

decline to impose the Government's proposed condition that would bar him from recording in public buildings and/or posting those recordings.

March 31, 2023

Yours, etc.

/S/ Nicholas T. Texido_____
NICHOLAS T. TEXIDO


/S/ Daniel J. DuBois_____
DANIEL J. DUBIOS

Attorneys for Defendant-Petitioner DANIEL WARMUS